OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, Shane Robinson, appeals the decision of the Jefferson County Court of Common Pleas, that found him guilty of aggravated murder, murder, complicity to murder, and two counts of felonious assault, and firearm specifications for the killing of Alfred Wade, Jr. Robinson raises a variety of challenges to his convictions. However, we conclude that his arguments are meritless and affirm Robinson's convictions.
 Facts {¶ 2} On August 5, 2001, Xuan Sayles broke into Robinson's apartment, beat Robinson's stepfather, Vernon Thurman, shot Robinson's brother, Shiraz, and robbed the apartment. Xuan Sayles is a cousin of Terrell Sayles and Wade. Robinson was upset about the robbery and the assault on his brother and he and his friend, Kelly Carter, believed that Terrell and Wade either had something to do with the robbery or had some form of control over Xuan. During the course of the month of August 2001, many people witnessed a rising in tensions between these two groups and on many occasions, Robinson and Carter stated that they wanted both to be repaid for what they lost in the robbery and revenge for the shooting of Robinson's brother.
 {¶ 3} On August 27, 2001, Robinson and Carter were at a bar in Steubenvile, Ohio, the Safari Lounge, with a group of their friends. Wade was also at the Safari Lounge with a group of his friends. Robinson and Carter left the Safari Lounge before Wade and a mutual friend warned Wade that he had a feeling that Carter and Robinson may do something bad that night. When Wade drove home in the early hours of August 28, 2001, he was met by Carter and Robinson. He got into an altercation with them and they shot him multiple times. Wade was dead by the time emergency medical personnel responded to the scene.
 {¶ 4} There were three eyewitnesses to the shooting, Demetrius Birden, a cousin of Wade's who was later murdered in an unrelated incident, Carl Williams, and Tina, an unidentified Caucasian girl. Williams, a convicted felon who was testifying in an attempt to cooperate with federal authorities, testified that he saw the entire altercation in front of *Page 2 
Wade's home.
 {¶ 5} Robinson was indicted for the murder of Wade on June 2, 2004. The indictment charged Carter with aggravated murder, complicity to aggravated murder, murder, complicity to murder, and two counts of felonious assault and complicity to felonious assault. Each of these charges also contained a firearm specification. The same charges were filed against Carter. Carter and Robinson retained the same counsel to represent them against these charges.
 {¶ 6} On January 12, 2005, the State made a plea offer to Carter. That offer proposed that Carter plead guilty to one count of felonious assault in exchange for testifying against Robinson. At two separate hearings, the trial court urged Carter to obtain the services of separate counsel to advise him on whether to accept this plea since his current counsel represented both he and Robinson. The trial court offered to appoint separate counsel to Carter for this purpose. Carter turned down the offer of separate counsel, refused to discuss the matter with new counsel, and rejected the State's plea offer.
 {¶ 7} The matter proceeded to a jury trial on February 1, 2005. During that trial, defense counsel's main strategy was to discredit the testimony of the State's only eyewitness, Williams, by using witnesses who testified that he was not in Steubenville on the date in question. In rebuttal, the State called a witness who testified that Robinson bribed one of the defense witnesses who testified that Williams was in Chicago during August 2001, not Steubenville. After deliberation, the jury found Robinson guilty of all counts. The trial court then sentenced Robinson to twenty-three years to life.
 Admission of Search Warrant as Evidence {¶ 8} In his first assignment of error, Robinson argues:
 {¶ 9} "It was plain error for the trial court to admit into evidence the search warrant and affidavit which contained both highly prejudicial hearsay statements and inadmissible information not otherwise admitted during the course of the trial, thereby denying Appellant his right to confront the witnesses against him under the Sixth Amendment of the U.S. Constitution and Article I Section 10 of the Ohio Constitution." *Page 3 
 {¶ 10} A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271. An abuse of discretion connotes more than an error of law or judgment, it implies the trial court acted unreasonably, arbitrarily, or unconscionably. State v. Adams (1980), 62 Ohio St.2d 151, 157. Consequently, this court may not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131.
 {¶ 11} In this case, Robinson objects to the admission of certain statements which were allegedly hearsay. However, Robinson did not object to the admission of these statements during trial. Accordingly, he has waived all but plain error. Crim.R.52(B); State v. Jalowiec,91 Ohio St.3d 220, 226, 2001-Ohio-0026. An error is not a plain error "unless, but for the error, the outcome of the trial clearly would have been otherwise. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, 97.
 {¶ 12} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" and generally inadmissible unless an exception applies. Evid.R. 801(C); Evid.R. 802. However, the admission of hearsay does not violate the Confrontation Clause if the declarant testifies at trial since the defendant has the opportunity to confront the declarant on cross-examination. State v. Keenan (1998),81 Ohio St.3d 133, 142, 689 1998-Ohio-0459, citing California v. Green (1970),399 U.S. 149.
 {¶ 13} In this case, the admission of these statements did not violate Robinson's rights under the Confrontation Clause. The person who signed the affidavit, Detective John Stasiulewicz, testified at trial. Likewise, the hearsay within the affidavit which Robinson objects to are statements by Tomeka Smith, another person who testified at trial. Each of these people were subject to cross-examination at trial, which preserved *Page 4 
Robinson's right to confront the witnesses against him.
 {¶ 14} Furthermore, it does not appear that the trial court committed plain error by admitting some of the statements in the search warrant and affidavit, since these statements were cumulative of evidence which was properly introduced. However, much of the affidavit contained impermissible hearsay which was prejudicial to Robinson. For instance, the affidavit stated that Smith overheard Robinson say on the night of Wade's death that he was going to shoot Wade. It also stated that a confidential informant had purchased illegal drugs from Robinson's residence and gave some of his criminal history.
 {¶ 15} Obviously, these statements are potentially prejudicial. However, we cannot conclude that the trial court committed plain error when it admitted this evidence. For reasons outlined in more detail below, the evidence against Robinson was convincing. Multiple witnesses testified that there were growing tensions between he and Wade prior to Wade's death, a witness overheard things from Robinson and Carter on the night in question which made him warn Wade that something bad might happen that night, an eyewitness saw Robinson shoot Wade, and Robinson bribed a witness to testify on his behalf at trial. With all this evidence of Robinson's guilt, we cannot conclude that the exclusion of this improperly admitted evidence would alter the outcome of this case. Accordingly, the arguments in Robinson's first assignment of error are meritless.
 Right to Confront Adverse Witnesses {¶ 16} In his second assignment of error, Robinson argues:
 {¶ 17} "The Appellant was denied a fair trial due to the admission of prejudicial hearsay statements and the trial court's denial of his right to confront the witnesses against him as guaranteed under theSixth Amendment of the United States Constitution and Article I Section 10 of the Ohio Constitution."
 {¶ 18} In this assignment of error, Robinson contends that he was deprived of his right to cross-examine the witnesses against him in three ways: 1) by limiting the defense's ability to cross-examine the State's only eye witness, Carl Williams, about his criminal history; 2) by allowing the prosecution to introduce testimony which was not based on the witness's personal knowledge; and 3) by admitting statements by Carter, *Page 5 
Robinson's non-testifying co-defendant, as substantive evidence of Robinson's guilt. Each of these issues will be addressed in turn.
 Impeaching Witness with Criminal Convictions {¶ 19} Robinson's defense at trial was to attack the credibility of the State's only eyewitness, Williams. He claims the trial court wrongfully prevented him from presenting this defense in full by limiting Robinson's ability to inquire into Williams' criminal history.
 {¶ 20} Robinson complains of three specific instances when the trial court sustained an objection, which limited his ability to cross-examine Williams on certain subjects. In the first instance, defense counsel was asking Williams about various identities he had used in the past. Williams explained that he had more than one identity because he was "involved in a fraud conspiracy." Counsel then asked Williams, "Tell me about that," to which the prosecutor objected. The trial court sustained the objection and explained at a sidebar that defense counsel could inquire into Williams' convictions, but not the background of those convictions. Defense counsel then began questioning Williams on a different subject.
 {¶ 21} In the second instance, defense counsel was cross-examining Williams about the specifics of what he allegedly saw at the scene and comparing these statements to Williams' prior statements to police. After Williams responded that he may have to have his memory refreshed, counsel asked, "How about 900 grams of marijuana and 220 grams of cocaine?" The prosecutor objected, the trial court sustained the objection, and the parties then had a sidebar. At the sidebar, the prosecutor stated that Williams had not been convicted of anything regarding those drugs and the trial court stated that he wanted "no further discussion" of those issues and, "We're done with that kind of stuff." Defense counsel then began questioning Williams on other topics.
 {¶ 22} In the final instance which Robinson cites, defense counsel was asking Williams about how long Williams had been cooperating with federal authorities during recross-examination. The prosecutor objected to these questions and the trial court excused the jury for lunch without ruling on the objection. At a sidebar, the trial court indicated that the parties held an unrecorded conference at which they discussed the *Page 6 
objection and instructed counsel that he should not inquire further into that topic. When the trial resumed after lunch, defense counsel did not resume this line of questioning.
 {¶ 23} Evid.R. 609(A) allows a party to use a witness's prior convictions to impeach the witness's testimony. However, this Rule only applies to convictions; prior bad acts which have not resulted in convictions cannot be used as the basis for an attack upon a witness's credibility. State v. Rodriquez (1986), 31 Ohio App.3d 174, 176.
 {¶ 24} When the conviction is only being used to attack a witness's credibility, a trial court has broad discretion to limit any questioning of the witness on cross-examination which asks more than the name of the crime, the time and place of conviction and the punishment imposed.State v. Robb, 88 Ohio St.3d 59, 71, 2000-Ohio-0275. Accordingly, this court must affirm the trial court's decision absent an abuse of that discretion. State v. Wright (1990), 48 Ohio St.3d 5, 8.
 {¶ 25} In this case, the sole purpose for using Williams' prior convictions was to attack his credibility. Accordingly, we review the trial court's decision for an abuse of discretion.
 {¶ 26} In this case, the trial court did not abuse its discretion when it refused to let defense counsel delve into the fraud conspiracy which Williams mentioned on cross-examination. Even if Williams' fraudulent acts had resulted in a conviction (and there is no evidence supporting this conclusion in the record), the information defense counsel was seeking was far beyond the name of the crime, the time and place of conviction and the punishment imposed. Furthermore, there is no indication in the record that the facts of that possible prior conviction bear any relevance to Williams' credibility in this case.
 {¶ 27} The trial court also did not abuse its discretion when it prevented defense counsel from questioning Williams about drugs. There is no indication that Williams was ever convicted for any offense involving the drugs to which counsel referred. In his brief, Robinson hints that criminal charges may have been filed against Williams regarding those drugs in Jefferson County and those pending charges may have given Williams a motive to lie on the stand. However, such evidence is not before this court in this appeal and, if true, would be the proper subject of a post-conviction proceeding. *Page 7 
 {¶ 28} Finally, the trial court did not abuse its discretion when it stopped Robinson's cross-examination into the length of time that Williams had been cooperating with federal authorities. After an unrecorded sidebar, the trial court concluded that the line of questioning should be discontinued. We must presume that the trial court's decision in this regard is correct, since the sidebar could easily have revealed that counsel was just going to further delve into the facts underlying Williams' criminal history. State v. Phillips,74 Ohio St.3d 72, 92, 1995-Ohio-0171.
 {¶ 29} In conclusion, the trial court did not abuse its discretion when it limited the scope of Robinson's cross-examination of Williams in the manners discussed above. Robinson's arguments to the contrary are meritless.
 Testimony Not Based on Personal Knowledge {¶ 30} In his second argument in support of this assignment of error, Robinson contends that his right to confrontation was violated by the admission of testimony about the deterioration in the relationship between Wade and Carter/Robinson since such testimony was hearsay and not based on personal knowledge.
 {¶ 31} The Confrontation Clause, which is encapsulated within theSixth Amendment of the Constitution, is the right of an accused "to be confronted with the witnesses against him." Sixth Amendment, United States Constitution. This Clause ensures that all criminal defendants have the right to confront the witnesses against them. Maryland v.Craig (1990), 497 U.S. 836, 843. The purpose behind the Confrontation Clause is two-fold: 1) to allow a criminal defendant the right to confront his or her accusing witness face-to-face in open court for truth-testing cross-exam inations and 2) to give the jury an opportunity to judge the credibility of the witness through observation of the witness's demeanor. Mattox v. United States (1895), 156 U.S. 237,242-43.
 {¶ 32} Witnesses must testify based on their personal knowledge. Evid.R. 602. Furthermore, hearsay, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," is generally inadmissible unless an exception applies. Evid.R. 801(C); Evid.R. 802.
 {¶ 33} Robinson's argument is that he was denied his right to confront the *Page 8 
witnesses against him because the portions of some of the witnesses' testimony, specifically evidence of the deteriorating relationship between Wade and Carter/Robinson, was hearsay and not based on their own personal knowledge is meritless. Robinson had the opportunity to cross-examine these witnesses and their credibility about those subjects could easily be called into question if Robinson could have proved that their testimony was not based on their own personal knowledge. Furthermore, many of these witnesses based their opinions on the relationship between Wade and Carter/Robinson on their personal knowledge; they did not repeat hearsay when they made these statements, but made independent observations based on what they heard. Any error in the admission of any of this testimony has nothing whatsoever to do with Robinson's rights under the Confrontation Clause. Furthermore, any error in the admission of any single one of these statements did not prejudice Robinson, since such testimony would merely be cumulative of the other, properly admitted testimony. Robinson was not prejudiced by the introduction of this evidence.
 Co-Defendant's Out-of-Court Statements {¶ 34} In his final argument within this assignment of error, Robinson contends that he was denied his rights under the Confrontation Clause when the trial court admitted out-of-court statements allegedly made by his co-defendant, Carter. He contends that such statements are "presumptively unreliable" and that the outcome of the trial likely would have been different if these statements had not been admitted. In response, the State contends that Robinson cannot raise this error since he made a knowing, intelligent, and voluntary decision to be jointly tried with Robinson.
 {¶ 35} The State's argument is meritless. Robinson filed an affidavit expressing his desire to be tried jointly with Carter. But at no time did the trial court ask Robinson the questions necessary to ascertain whether he knew and understood the issues surrounding the admission of Carter's out-of-court statements against him. Robinson's actions prior to trial do not constitute a knowing, intelligent, and voluntary waiver of these issues.
 {¶ 36} Nevertheless, Robinson did not object to the admission of these statements *Page 9 
during trial. Accordingly, he has waived all but plain error. Crim.R.52(B); State v. Jalowiec, 91 Ohio St.3d 220, 226, 2001-Ohio-0026. An error is not a plain error "unless, but for the error, the outcome of the trial clearly would have been otherwise. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, 97.
 {¶ 37} Robinson tries to argue that hearsay statements are subject to a higher level of scrutiny, by saying that they are "presumptively unreliable." However, Robinson uses that phrase out of context. The United States Supreme Court has held the admission of certain types of hearsay evidence is "presumptively unreliable" and that the admission of such evidence may violate the Confrontation Clause. Lilly v.Virginia (1999), 527 U.S. 116. However, this presumption is overcome if the statement bears adequate indicia of reliability, such as being a "firmly rooted" hearsay exception. Roberts at 66. Hearsay-related issues are not subject to higher scrutiny than other evidentiary issues, and Robinson's insinuations that they are subject to heightened scrutiny are meritless.
 {¶ 38} Robinson contends that the admission of Carter's statements violates both the rule against hearsay and his rights under the Confrontation Clause. The Confrontation Clause and hearsay rules spring from a common origin and protect the same values; nevertheless, the proscriptions of the Confrontation Clause cannot be likened with the general rule prohibiting the admission of hearsay statements. White v.Illinois (1992), 502 U.S. 346, 352. The hearsay rule generally prevents the admission of out-of-court statements made by a non-witness, since such statements are of questionable reliability. See State v.McGuire, 80 Ohio St.3d 390, 400, 1997-Ohio-0335, citing Chambers v.Mississippi (1973), 410 U.S. 284 (The hearsay rule should not be strictly applied in order to exclude highly reliable evidence, since such an exclusion may deny due process to a criminal defendant).
 {¶ 39} In contrast, the Confrontation Clause ensures that a defendant will not be convicted based upon charges of unseen, unknown, and unchallengeable witnesses. Lee v. Illinois (1986), 476 U.S. 530, 540. Accordingly, the Confrontation Clause prohibits *Page 10 
the admission of some evidence that would otherwise be admissible under a hearsay exception. Idaho v. Wright (1990), 497 U.S. 805, 814.
 {¶ 40} The admission of hearsay does not violate the Confrontation Clause if 1) the prosecutor shows that the declarant is unavailable to testify and 2) the statement bears adequate "indicia of reliability."Ohio v. Roberts (1980), 448 U.S. 56, 66. The indicia of reliability prong can be satisfied with a showing that the evidence falls within a "firmly rooted" hearsay exception or the evidence has particularized guarantees of trustworthiness. Id. "To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial."Wright at 822. The guarantees of trustworthiness must be shown from the totality of the circumstances. Id. at 819.
 {¶ 41} Furthermore, in a joint trial of two defendants, a confession of one co-defendant who did not testify could not be admitted into evidence even with a limiting instruction that the confession could only be used against the confessing defendant. State v. Moritz (1980),63 Ohio St.2d 150, 153, citing Bruton v. United States (1968),391 U.S. 123. The rationale behind this rule is "`that the introduction of a potentially unreliable confession of one defendant which implicates another defendant without being subject to cross-examination deprives the latter defendant of his right to confrontation guaranteed by theSixth Amendment.'" Id., quoting United States v. Fleming (C.A.7, 1979),594 F.2d 598, 602. This rule applies to both confessions which specifically incriminate a codefendant and "`all statements that tend significantly to incriminate a co-defendant, whether or not he is actually named in the statement.'" Id., quoting Fox v. State
(Ind.App.1979), 384 N.E.2d 1159, 1170.
 {¶ 42} The first statement which Robinson claims was wrongfully admitted against him was Carter's statement to Dixon that he was angry about the shooting of Robinson's brother. This statement falls within a firmly rooted hearsay exception. Evid.R. 803(3) allows hearsay to be introduced if it is "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, *Page 11 
mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." Carter's statement that he was angry is a statement regarding his then existing state of mind. Accordingly, its admission does not violate the rule against hearsay. Furthermore, this statement does not tend to incriminate Robinson in Wade's death since Robinson was not present to hear the statement. The fact that Carter was angry that Xuan Sayles shot Shiraz Robinson does little to prove that Shane Robinson murdered Wade. Accordingly, the trial court did not err when allowing this statement to be introduced.
 {¶ 43} The second of Carter's statements which Robinson raises in this assignment of error was a statement by Carter on the night of Wade's death that he wanted to kill everyone in Wade's group of friends. This statement is also a statement of Carter's then existing state of mind and, therefore, falls within a firmly rooted hearsay exception. Robinson heard Carter make this statement soon before he accompanied Carter to Wade's house to wait, while armed with handguns, for Wade to arrive. The statement, in and of itself, does not implicate Robinson, but when combined with other facts it shows that Robinson could be willing to provide support and/or assistance to Carter, a man who Robinson knew had homicidal intent toward Wade and opportunity and means to carry out that intent. Accordingly, the trial court erred when it allowed this evidence to be introduced against Robinson.
 {¶ 44} Nevertheless, this error does not constitute plain error since the outcome of the trial clearly would not have been different but for the admission of this evidence. The exclusion of this evidence would not undermine the extensive evidence showing the tense nature of the relationship between Robinson and Wade prior to Wade's death, the "bad feeling" witnesses had that night, or Williams' eyewitness account of the confrontation between Wade and Robinson. Accordingly, the admission of this statement does not constitute a basis for reversing Robinson's conviction.
 {¶ 45} The third set of statements Robinson identifies involve a conversation between Carter and Terrell Sayles regarding the robbery. In this conversation, Carter *Page 13 
angrily told Terrell that he knew that Xuan committed the robbery and shooting and told Terrell that he intended to get his things which had been stolen. Once again, these statements show Carter's then existing state of mind and, therefore, should not be excluded under the hearsay rule. Furthermore, they do not implicate Robinson in Wade's death. Accordingly, the trial court did not commit plain error by allowing this testimony to be introduced against Robinson.
 {¶ 46} The same appears to hold true for another witness's account of a similar incident. One of Wade's friends, Donte Brown, was at Terrell Sayles's home with Wade when Carter drove up, got out of his car, and demanded that someone "pay him his money." This statement does not implicate Robinson in Wade's murder, so it does not implicateBruton issues, and it is a further expression of Carter's then existing state of mind. Accordingly, the trial court did not commit plain error by allowing this testimony to be introduced against Robinson.
 {¶ 47} The final statement of Carter's which Robinson raises in this assignment of error was in regard to an incident which occurred in the month prior to Wade's death, but after the shooting of Robinson's brother. Carter approached a man named Donnell Johnson and asked him whether Johnson had something that belonged to Carter, demanding that he see what was in Johnson's pockets. These statements clearly do not implicate Robinson in Wade's death since there is no evidence that Johnson was in any way connected to Wade. The statements may have been hearsay, but since they are basically unrelated to the charges against Robinson, it does not appear that the exclusion of these statements against him would affect the outcome of this case. Accordingly, it does not appear that the trial court committed plain error when it allowed these statements to be admitted.
 {¶ 48} In conclusion, Robinson cannot show that the trial court committed plain error by allowing the introduction of any of these statements into evidence against him and his arguments to the contrary are meritless. *Page 13 
 Other Evidentiary Issues {¶ 49} In his third assignment of error, Robinson argues:
 {¶ 50} "The trial court denied the Appellant his rights to a fair trial and due process of law by permitting witness testimony that did not conform to Evid.R. 401, 403, 404(B), and 602."
 {¶ 51} Robinson contends that the trial court erred when allowing a variety of other types of evidence to be introduced, including evidence of prior firearm possession by both Carter and Robinson and questions concerning whether Robinson had bribed defense witnesses. We will address the admissibility of each of these types of evidence separately.
 {¶ 52} In this case, the trial court presented repeated evidence of instances when Carter brandished a firearm. This is a form of character evidence. Character evidence is generally not admissible for the purpose of proving that a person acted in conformity therewith on a particular occasion. Evid.R. 404(A). Thus, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). This rule of evidence is in accord with R.C.2945.59, which allows this kind of evidence to come in for particular purposes in a criminal case.
 {¶ 53} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." Id.
 {¶ 54} "The focus of the inquiry into the admissibility of other-acts evidence is whether the evidence is being offered for the impermissible purpose of proving that the *Page 14 
accused acted in conformity with his or her criminal character in committing the charged offenses, or whether the evidence is being offered for another purpose." State v. Pearson (1996),114 Ohio App.3d 168, 185. Because Evid.R. 404(B) and R.C. 2945.59 contain exceptions to the common-law rule that such other-acts evidence is inadmissible, both provisions must be construed strictly against the admissibility of such evidence. State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus.
 {¶ 55} Evidence that a person carries a gun is the type of "other acts" evidence which is generally inadmissible since it portrays the person as a violent individual who regularly carried guns. State v.Carusone, 1st Dist. No. C-010681, 2003-Ohio-1018, at ¶ 30. However, this type of evidence is admissible if it is admitted for another purpose.State v. Parrish (1991), 71 Ohio App.3d 659, 666.
 {¶ 56} Evidence that a defendant in a crime involving a firearm possessed a firearm at a point near in time to the crime is relevant to show that the person had an opportunity to use a firearm in the crime.Parrish at 666. Such evidence can also be used to prove motive, intent, preparation, and plan. State v. Bruno, 8th Dist. No. 77202, 2001-Ohio-4227.
 {¶ 57} The State argues that Robinson opened the door to the admission of this type of evidence. But all of the testimony in this case regarding Carter's prior possession or non-possession of firearms, including that from Carter's brother, was elicited by the State. In this case, Robinson never opened the door to evidence of Carter's propensity for possessing firearms.
 {¶ 58} Furthermore, this evidence was not relevant to the issue of Robinson's guilt. Carter's prior possession of a firearm could potentially show that he had an opportunity to murder Wade with such a weapon. However, it does not prove anything with regard to Robinson. Accordingly, it was error to allow this evidence to be introduced against Robinson.
 {¶ 59} Nevertheless, the trial court did not commit plain error when it allowed this evidence to be introduced. Although this evidence was irrelevant toward Robinson's guilt, it was highly relevant to prove Carter's guilt. Furthermore, the exclusion of this evidence *Page 15 
did not likely affect the outcome of this case. Multiple witnesses testified about Robinson's motive for killing Wade, an eyewitness saw the killing, and the circumstances surrounding that killing indicate that it was premeditated. Accordingly, we cannot conclude that the trial court committed plain error by admitting this evidence in this case.
 {¶ 60} Robinson next argues that the trial court should have excluded evidence of his own prior brandishment of a firearm. However, this evidence was admissible for a permissible purpose. No firearm matching the one used to murder Wade was ever recovered. However, many bullets at the scene and within Wade were recovered. Numerous witnesses testified that they had seen Robinson with a firearm and that firearm matched the caliber of weapon which was used to kill Wade. Thus, this testimony established that Robinson had an opportunity to murder Wade with such a weapon. This testimony could also establish intent, preparation, or plan, since Robinson could arguably have been carrying the firearm in preparation for retaliation for the assault on his brother. Robinson's argument that this evidence should have been excluded is meritless.
 {¶ 61} Robinson next contends that defense witnesses were improperly asked whether they were paid in exchange for their testimony. However, these questions are, in and of themselves, not improper. The fact of whether a witness was bribed in exchange for her testimony is highly relevant to any judicial inquiry. State v. Walker (1978),55 Ohio St.2d 208, 215. If Robinson believes the prosecutor did not have a reasonable basis for asking this question, then he should have raised this issue at the time. Robinson cannot argue that the trial court should not have admitted evidence which tends to show that he bribed a witness. Robinson's arguments in this regard are meritless.
 Prosecutorial Misconduct {¶ 62} In his fourth assignment of error, Robinson argues:
 {¶ 63} "The Appellant's due process right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution and Sections 5 and 10 Article I of the Ohio Constitution were violated by prosecutorial misconduct constituting plain error."
 {¶ 64} The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. State v.Fears, 86 Ohio St.3d 329, 332, 1999-Ohio- *Page 16 
0111. In reviewing a prosecutor's alleged misconduct, a court should look at whether the prosecutor's remarks were improper and whether the prosecutor's remarks affected substantial rights of the appellant.State v. Smith (1984), 14 Ohio St.3d 13, 14-15. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Hanna, 95 Ohio St.3d 285, 2002-Ohio-2221, at ¶ 61, quoting Smith, 455 U.S. at 219. An appellate court should not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. State v. LaMar,95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 121. A failure to object to alleged prosecutorial misconduct waives all but plain error. Hanna at ¶ 77;LaMar at ¶ 126.
 {¶ 65} Robinson argues the prosecutor committed misconduct in a variety of ways, which we address below.
 Witness Tampering {¶ 66} Robinson argues that the prosecutor committed misconduct by asking defense witnesses whether they had been bribed without having a basis for such an accusation. During his cross-examination of defense witness Brandy West, the prosecutor asked if she had received any money from the defendants in exchange for her testimony. Robinson claims this question was improper because the State did not have a basis for asking it.
 {¶ 67} Evid.R. 607(B) requires that "[a] questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact." Robinson never objected to the question to test whether the State had a reasonable basis for asking this question. Accordingly, we cannot conclude that the prosecutor's conduct in this regard was improper.
 {¶ 68} The prosecutor also asked another defense witness, Daphne Birden, whether she had been bribed in exchange for her testimony. It then introduced the testimony of her former boyfriend, James Wrenn, who stated that Birden told him that Robinson had paid her for her alibi testimony. Robinson appears to claim that this was improper. However, evidence that tends to demonstrate the attempted bribery of a *Page 17 
witness by a defendant is admissible against that defendant since such an attempt is an admission of guilt. State v. Hunt, 8th Dist. No. 84528,2005-Ohio-1871, at ¶ 8. This evidence was clearly admissible against Robinson and his arguments to the contrary are meritless.
 Birden's Failure to Appear for Rebuttal {¶ 69} Robinson next argues that the prosecutor committed misconduct when it improperly discredited Birden's testimony in the eyes of the jury by highlighting the fact that she did not appear to testify on rebuttal in contravention of a court order that she do so. The prosecutor responds that, although he did not expect that Ms. Birden would be present at trial that day, he had every right to call her as a witness on rebuttal and that it was not misconduct for him to do so. Neither party has cited any case dealing with a similar fact pattern.
 {¶ 70} In its cross-examination of Birden, the State asked her whether she received a certain phone call and whether she would be surprised if there was a recording of that phone call. After asking these questions, the prosecutor informed the trial court at a sidebar that it had a copy of this tape, but did not wish to play it at this time. Instead, the prosecutor stated that he preferred to recall Birden on rebuttal and play the tape at that time. The trial court then excused Birden from the witness stand, but told her "I think you're going to be recalled. So, we need for you to stay," to which Birden replied, "Okay."
 {¶ 71} At the end of the day, the prosecutor asked to ensure that the defense witness which he planned to call the next day in rebuttal knew that they should appear. The trial court asked if Birden was still present, since it had specifically told her to stay. Defense counsel informed the trial court that she was not in the hall and the prosecutor speculated that she must have left. The prosecutor asked the trial court if it felt that he should subpoena her to appear the next day, but the trial court answered that it did not believe that this was necessary. The prosecutor then told the trial court that he had four phone numbers he could use to contact Birden and that he would "track her down."
 {¶ 72} The next day, the State began its presentation of the evidence on rebuttal by calling Birden to the stand. The bailiff informed the trial court, in the jury's presence, *Page 18 
that Birden was not present. At a sidebar, the prosecutor said he tried contacting Birden at the three phone numbers available to him, but that there was no answer at two of the numbers and no minutes available for the third number. The prosecutor then called his next witness.
 {¶ 73} During closing argument, the prosecutor used Birden's failure to appear for rebuttal to impeach her testimony.
 {¶ 74} "Daphne Birden, [defense counsel] didn't even mention her [during his closing argument]. You know why he didn't mention her? Because she didn't come back. She left and was told by the Judge to come back and she didn't even come back. Why? Because of the tape. I told her I was going to play it for her. Come back to listen to it. I guess she wasn't interested. Speaks volumes.
 {¶ 75} "What people don't say is as important as the things they do say. What people don't do is as important as the things that they do. * * *
 {¶ 76} "Daphne Birden doesn't seek the truth. She gets paid for the truth. Her truth, whatever the price is, she must not have gotten paid enough. She could only tell half of the story."
 {¶ 77} A prosecutor is encouraged to prosecute with earnestness and vigor. State v. Smith (1984), 14 Ohio St.3d 13, 14, citing Berger v.United States (1935), 295 U.S. 78, 88. Nevertheless, there are limitations on what a prosecutor may do at trial. For example, prosecutors may not allude to matters not supported by admissible evidence in their closing argument. Id. The prosecutor in this case did just that. There was never any evidence before the jury that Birden disobeyed the trial court's order by not returning to be called as a rebuttal witness. Likewise, there is no evidence that the prosecutor told Birden he was going to play the tape. The prosecutor used these facts, which were not based on admissible evidence, to directly attack Birden's credibility. The prosecutor in this case committed misconduct when making this argument to the jury.
 {¶ 78} Nevertheless, Robinson cannot show that he was prejudiced by this misconduct. There was a second reason to doubt Birden's testimony, Wrenn's testimony that Robinson bribed Birden. This ground alone is enough to seriously doubt Birden's *Page 19 
credibility and was mentioned by the prosecutor during his closing argument. Accordingly, the prosecutor's remarks in this case regarding Birden's failure to appear for rebuttal were not enough, on their own, to require a reversal. Robinson's arguments to the contrary are meritless.
 Closing Argument {¶ 79} Robinson contends that much of the State's closing argument consisted of a deliberate attempt to appeal to the jury's emotions, repeated interjection of the prosecutor's personal opinion, repeated references to facts outside the record, and denigration of defense counsel.
 {¶ 80} When reviewing the statements a prosecutor makes during closing argument for prosecutorial misconduct, the Ohio Supreme Court has instructed appellate courts to give prosecutors "a certain degree of latitude in summation. The prosecutor may draw reasonable inferences from the evidence presented at trial, and may comment on those inferences during closing argument. We view the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial." (Citations omitted) State v. Treesh, 90 Ohio St.3d 460,466, 2001-Ohio-0004.
 {¶ 81} Despite the fact that prosecutors are encouraged to argue fervently for conviction, see State v. Stephens (1970),24 Ohio St.2d 76, 82, a prosecutor cannot express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused.State v. Smith (1984), 14 Ohio St.3d 13, 13-14. Furthermore, a prosecutor cannot go beyond the evidence which is before the jury when arguing for a conviction. Id.
 {¶ 82} Robinson argues that the prosecutor's entire closing argument was designed to appeal to the juror's emotions, but a review of the entire argument does not support this contention. The prosecutor certainly began and finished his closing argument with references to the loss that Wade's family suffered. However, the bulk of the closing argument is based on the evidence introduced at trial and the prosecutor's inferences from that evidence. "[A] conviction based solely on the inflammation of fears and passions, rather than proof of guilt, requires reversal." State v. Williams (1986), 23 Ohio St.3d 16, 20. But "[r]ealism compels us to recognize that criminal trials cannot be *Page 20 
squeezed dry of all feeling." State v. Keenan, 66 Ohio St.3d 402, 409. The prosecutor did not excessively appealed to the jury's emotions with his references at the beginning and end of his argument.
 {¶ 83} Robinson next contends that the prosecutor improperly expressed his personal belief or opinion numerous times and made numerous references to facts outside the record. However, a prosecutor is permitted to make reasonable inferences from the evidence and many of these instances are nothing more than inferences from the evidence. SeeTreesh at 466. For instance, the prosecutor told the jury, "I know what happened in this case." However, he followed this up by explaining that he and the jury knew what happened because they had all heard the testimony. Clearly, the prosecutor's statement was an inference based on the evidence.
 {¶ 84} Similarly, the prosecutor referred to Robinson as someone who kills people. But this statement does not indicate that the prosecutor has knowledge of facts outside the record. Instead, it shows that he reached this conclusion based on the evidence in this case.
 {¶ 85} Finally, Robinson complains about the references to him and Carter being drug dealers. However, a witness testified that Carter and Robinson were angry because drugs were stolen in the robbery of Robinson's brother. And the State's whole case was based on the theory that Robinson and Carter sought revenge on Wade because of that robbery. The prosecutor's comments were merely inferences from evidence in the record.
 {¶ 86} Other examples of this type of prosecutorial misconduct which Robinson cites, such as the feelings of people on the street, speculation about whether Robinson and Carter planned the shooting before it occurred, and speculation on exactly what occurred at the scene of the crime, are more obviously examples of inferences based on the evidence.
 {¶ 87} Finally, Robinson maintains that the prosecutor improperly denigrated defense counsel in his closing argument. This argument is baseless. During trial, a witness testified that he saw a defense witness receive money from Robinson shortly *Page 21 
after that defense witness spoke to defense counsel. The prosecutor's recitation of these facts at closing argument is proper and does not denigrate counsel since it does not infer that counsel knew or approved of the alleged bribes.
 {¶ 88} Robinson's arguments concerning the prosecutor's comments during closing statements all are meritless.
 Jury Misconduct {¶ 89} In his fifth assignment of error, Robinson argues:
 {¶ 90} "The trial court erred when it failed to declare a mistrial after the impartiality of the jury was compromised when jurors discussed and considered information outside of the record in violation of the Appellant's Fifth Amendment right to be tried and convicted only in the evidence presented at trial and of record and his Sixth Amendment right to an impartial jury."
 {¶ 91} In this case, a juror informed the trial court during deliberations that he was uncomfortable with the possibility of a guilty verdict since he knew a defense witness. The jury's note to the trial court stated:
 {¶ 92} "Juror realized during the testimony that he was familiar with Blake Thompson. Blake resided at the same complex (apt) within the last year. Juror did not know his name. Juror feels uncomfortable with possibility of defendants receiving a guilty verdict. Blake does recognize Juror as he has spoken to him in Hallway."
 {¶ 93} After receiving this note, the trial court spoke to the juror in question. He stated that he recognized "quite a few of the audience members" and was feeling "paranoid" about the possibility that he may be retaliated against if there was a guilty verdict. He stated that he voiced these concerns to the other jurors. However, when asked by the court whether he could put these concerns aside and decide the case based on the available evidence, the juror stated that he could do so. After the trial court questioned the juror, defense counsel objected, claiming that he believed the jury was no longer competent to give a verdict. Robinson claims the trial court was obligated to question each juror regarding whether this information would influence their decision, which it did not do. *Page 22 
 {¶ 94} "An accused is entitled to a trial before an impartial, unprejudiced, and unbiased jury." State v. Daniels (1993),92 Ohio App.3d 473, 486. This right is guaranteed by both the Ohio and United States Constitutions. State v. Jaryga, 11th Dist. No. 2003-L-023, 2005-Ohio-0352, at ¶ 72. A jury's verdict must be based solely on the evidence and argument presented in open court, not on any outside influence. Patterson v. Colorado (1907), 205 U.S. 454, 462; see alsoSmith v. Phillips (1982), 455 U.S. 209, 217 ("Due process [requires] a jury capable and willing to decide the case solely on the evidence before it.").
 {¶ 95} This and other district courts of appeals have, in the past, presumed prejudice when a criminal defendant has proven juror misconduct. See State v. Hood (1999), 132 Ohio App.3d 334, 338;State v. Spencer (1997), 118 Ohio App.3d 871, 873; State v. King (1983),10 Ohio App.3d 161, 165. However, the Ohio Supreme Court specifically rejected a presumption of prejudice in this situation in State v.Keith, 79 Ohio St.3d 514, 526, 1997-Ohio-0367, when it "reaffirmed a long-standing rule that a court will not reverse a judgment based upon juror misconduct unless prejudice to the complaining party is shown." See also State v. Adams, 103 Ohio St.3d 508, 2004-Ohio-5845, at ¶ 42, 45 ("[T]he party complaining about juror misconduct must establish prejudice."). Thus, the party making a claim of juror misconduct must first prove misconduct and then prove that they were prejudiced by that misconduct. Jargya at ¶ 75.
 {¶ 96} Trial courts are given broad discretion when dealing with allegations of juror misconduct. Keith at 526-527. Thus, its decision when faced with such allegations must be reviewed for an abuse of discretion. Id. at 528. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 97} Robinson argues that the juror was biased because he was concerned for his safety if the jury rendered guilty verdicts and we agree that is not ideal for a juror to have these concerns when deciding a defendant's guilt. However, "[a] juror's concerns for safety, standing alone, are not sufficient to warrant a new trial." State v. Garcia, 8th *Page 23 
Dist. No. 79917, 2002-Ohio-4179, at ¶ 86. The party alleging juror misconduct must still prove bias. Id. Thus, the fact that a juror worked in a high-crime area and was afraid the defendant's family knew him did not prove that he was biased. Id. Likewise, the fact that jurors felt like they were followed when out to lunch and were concerned about the defendants' access to the personal information on the jury questionnaires did not prove bias. Daniels at 487.
 {¶ 98} We have a hard time understanding how the juror's concerns for his safety if he returned a guilty verdict were likely to prejudice him against Robinson. His concerns, if they did influence him at all, would have made him more likely to find Robinson not guilty, rather than guilty. Furthermore, the juror in question told the judge that he could decide the case based on the facts presented at trial, even after bringing his concerns to the trial court's attention.
 {¶ 99} Nevertheless, we must review the trial court's decision not to grant a mistrial for an abuse of discretion. When applying this standard of review, we may not substitute our judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. Thus, even if the juror's statements raised some doubts about his ability to base his judgment solely on the facts in evidence, we must defer to the trial court if its decision is reasonable. This is especially true in situations like this, where the trial judge is best able to view the people involved and observe their demeanor, gestures and voice inflections, and use such observations in deciding on an appropriate course of action. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. We cannot say, in this case, that the trial court's decision not to grant a mistrial was so unreasonable that it amounts to an abuse of discretion.
 {¶ 100} Finally, Robinson suggests that the trial court should have conducted a more thorough investigation into juror bias by questioning each juror individually to see if the juror's concerns affected them in any way. "[T]he scope of voir dire is within the discretion of the trial court and varies depending on the circumstances of each case." State v.Williams, 79 Ohio St.3d 1, 5, 1997-Ohio-0407. In this case, the trial court spoke to the juror in question about his concerns. He then told the jury as a whole that the *Page 24 
matter had been dealt with.
 {¶ 101} The trial court is not obliged to question every juror about their ability to act as an unbiased juror merely because of an incident like this. Instead, its obligation is to reasonably ensure that the jury will not consider these facts in its deliberations. We believe the trial court's actions were reasonably aimed at achieving this goal. Accordingly, the trial court did not abuse its discretion by not questioning each juror, especially in the absence of a request to do so by the defense.
 {¶ 102} For these reasons, the arguments within Robinson's fifth assignment of error are meritless.
 Offense of Inferior Degree {¶ 103} In his sixth assignment of error, Robinson argues:
 {¶ 104} "The trial court committed reversible error and deprived Appellant of due process of law by failing to instruct the jury on the inferior degree offense of voluntary manslaughter."
 {¶ 105} According to Robinson, he and Wade were involved in mutual combat, a classic voluntary manslaughter scenario, and that the jury should have been given the opportunity to consider this offense as an alternative to murder or aggravated murder. A jury may consider a lesser offense that is an inferior degree of the indicted offense. State v.Deem (1988), 40 Ohio St.3d 205, paragraph one of the syllabus. "An offense is an `inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." Id. at paragraph two of the syllabus. Under this test, voluntary manslaughter is an inferior degree of murder. State v. Shane (1992), 63 Ohio St.3d 630,632.
 {¶ 106} "[A] defendant charged with murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." Id. In order to be entitled to such an instruction, a defendant must show that there is more than "some evidence" meriting such an instruction. Id.
 {¶ 107} In this case, the evidence does not reasonably support an acquittal for *Page 25 
murder and a conviction for voluntary manslaughter. Voluntary manslaughter is defined as knowingly killing a person "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C. 2903.03(A). Situations which classically fit into a voluntary manslaughter situation include assault and battery, mutual combat, illegal arrest, and discovering a spouse in the act of adultery.Shane at 365.
 {¶ 108} This case does not involve a typical voluntary manslaughter situation. Robinson and Carter had been angry with Wade for over a month. Earlier in the night of Wade's death, Robinson and Carter were acting in such a way as to make Troy Dixon, a friend of Wade's, believe that something bad would happen. Robinson and Carter then went to Wade's residence to wait for him to arrive. The two of them were armed while waiting for Wade to arrive. These facts belie any claim of a "sudden fit of passion" or a "sudden fit of rage." Instead, they show that Carter and Robinson planned on confronting Wade.
 {¶ 109} The facts of this case do not reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter. Thus, the trial court did not err when it failed to instruct the jury on the offense of voluntary manslaughter. Robinson's arguments to the contrary are meritless.
 Effective Assistance of Counsel {¶ 110} In his seventh assignment of error, Robinson argues:
 {¶ 111} "The Appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution due to trial counsel's conflict of interest in representing the Appellant and his codefendant at trial; his failure to seek severance of defendants; his failure to object to other act and hearsay evidence; his failure to request limiting instructions of law; his failure to request instruction for inferior degree offense; and his failure to object to the prosecutor's improper closing argument."
 {¶ 112} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate counsel's performance was deficient and that deficient performance *Page 26 
prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668,687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98, 100. When reviewing whether counsel's performance was ineffective, courts must refrain from second-guessing strategic decisions of trial counsel. State v. Sallie, 81 Ohio St.3d 673, 674, 1998-Ohio-0343. Ineffectiveness is demonstrated by showing counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. State v. Hamblin (1988), 37 Ohio St.3d 153, 156. To establish prejudice, a defendant must show there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Strickland at 694. A reasonable probability must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The defendant bears the burden of proof in demonstrating ineffective assistance of counsel. Smith at 100.
 {¶ 113} Each of Robinson's claims of the ineffective assistance of counsel will be addressed separately.
 Conflict of Interests {¶ 114} In this case, the same defense counsel represented both Carter and Robinson at their joint trial. Prior to trial, the State offered Carter a plea agreement, which was contingent upon Carter's agreement to testify against Robinson. At two hearings, the trial court inquired into whether Carter wanted to discuss the plea offer with separate, court-appointed counsel. Each time, Carter refused. Robinson contends that defense counsel had an actual conflict of interest once this offer was made and that prejudice is presumed once an actual conflict of interest existed.
 {¶ 115} In cases of potential conflict of interest resulting from one attorney representing co-defendants, the United States Supreme Court has held that dual representation is not a per se violation of due process and, in some cases, it may be preferable to launch a common defense against a common attack. Holloway v. Arkansas (1978), 435 U.S. 475,482-483. However, the possibility of a conflict of interest exists in every instance of multiple representation. Cuyler v. Sullivan (1980),446 U.S. 335, 348. *Page 27 
 {¶ 116} Both defense counsel and the trial court have an affirmative duty to ensure that conflicts do not interfere with a defendant's representation. State v. Dillon, 74 Ohio St.3d 166, 167-68, 1995-Ohio-0169. If defense counsel recognizes a potential conflict in his representation of both clients, he should timely object to his dual representation and move the court to withdraw from representing at least one of the two defendants since he "is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial."Holloway at 485. If an attorney makes such an objection, the trial court must either appoint separate counsel or "take adequate steps to ascertain whether the risk [of conflict] was too remote to warrant separate counsel." Id. at 484. Failure to make such an inquiry when faced with a timely objection deprives the defendant of his constitutional guarantee of effective assistance of counsel. Id. Consequently, when a court requires joint representation over objection without making sufficient inquiry, prejudice is presumed, and reversal is required. Id. at 488.
 {¶ 117} In some cases, neither counsel nor defendant raises an objection to the joint representation. In those cases, "[a] trial court is not constitutionally mandated to inquire of criminal co-defendants whether they wish to be jointly represented by the same counsel."State v. Manross (1988), 40 Ohio St.3d 180, syllabus. A trial court's duty to inquire only arises when it "knows or reasonably should know that a particular conflict exists * * *." Id. at 181. Absent any indication to the contrary, a trial court may assume that either the joint representation presents no conflict or that the lawyer and clients have knowingly accepted the risk of any conflict that may exist.Cuyler at 347. In those situations where no objection is raised to the trial court regarding the joint representation, the defendant's conviction will only be reversed if he "shows that an actual conflict adversely affected counsel's representation of said defendant."Manross at syllabus; Cuyler at 348.
 {¶ 118} Robinson claims that a court must presume prejudice when there is an actual conflict of interest. However, this is not what the caselaw actually says. Instead, prejudice is presumed only if the defendant can show the conflict adversely affected *Page 28 
counsel's representation of said defendant. See Cuyler at 348-350.
 {¶ 119} In this case, the prosecution's plea offer created an actual conflict of interest between Carter and Robinson, since a condition of that offer was that Carter testify against Robinson. However, if this conflict of interest did not adversely affect Robinson because Carter ultimately decided not to accept the plea agreement. The actual conflict which existed between Carter and Robinson disappeared once Carter turned down the offer. Counsel's dual representation of Carter and Robinson did not adversely affect counsel's representation of Robinson.
 Failure to Seek Severance {¶ 120} Robinson next argues that his counsel was ineffective for failing to request separate trials for Carter and Robinson. He claims that counsel's ineffectiveness in this regard allowed damning evidence against Carter to be used against him as well. Joinder is governed by R.C. 2945.13, which provides as follows:
 {¶ 121} "When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately."
 {¶ 122} The law favors joinder because a single trial will conserve time and expense and may minimize the potentially disparate outcomes that can result from successive trials before different juries.State v. Schiebel (1990), 55 Ohio St.3d 71, 86-87; State v. Torres
(1981), 66 Ohio St.2d 340, 343; State v. Thomas (1980),61 Ohio St.2d 223, 225. However, the interest in joint trials is not unrestricted. Crim.R. 14 allows a trial court to sever the defendants or provide other relief in the interest of justice if a defendant can demonstrate that he is prejudiced by joinder with other defendants charged in the indictment. Severance may be warranted if the trial court finds a serious risk that a joint trial would compromise a specific right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence. United States v. Zafiro (1993), 506 U.S. 534,539.
 {¶ 123} Robinson argues that joinder of the trials allowed evidence which was *Page 29 
inadmissible against him, namely, Carter's prior brandishment of a firearm and threats to Wade, to be used against him. However, this evidence was, for the most part, cumulative of other evidence already introduced. Many witnesses testified that tensions had been rising between Robinson and Carter on one side and Sayles and his friends on the other, with threats being made by both Carter and Robinson. Many witnesses testified that they had seen Carter with a firearm. Thus, the fact Carter brandished a firearm and/or threatened Wade did not add much to the State's overall evidence.
 {¶ 124} In conclusion, counsel was not ineffective for failing to request that the trial be severed. Robinson's arguments to the contrary are meritless.
 Failure to Object to Hearsay Evidence {¶ 125} Robinson next argues that defense counsel was ineffective for failing to object to the admission of statements made by Carter as substantive evidence against him. This argument is similar to the one addressed in Robinson's second assignment of error. For the reasons given in that assignment of error, Robinson's arguments in this regard are meritless.
 Failure to Object to Prosecutorial Misconduct {¶ 126} Robinson's final argument within this assignment of error is that his counsel was ineffective for failing to object to the instances of prosecutorial misconduct he raises in his fourth assignment of error. However, for the reasons given above, it appears that this alleged misconduct was either not misconduct or did not affect Robinson's substantial rights. Accordingly, Robinson's arguments in this regard are meritless.
 Weight and Sufficiency of the Evidence {¶ 127} In his eighth assignment of error, Robinson argues:
 {¶ 128} "The Appellant's convictions for aggravated murder and complicity to aggravated murder are against the manifest weight of the evidence and without sufficient evidence as a matter of law."
 {¶ 129} The Ohio Supreme Court has stated that arguments concerning the "sufficiency of the evidence' should not be confused with those addressing the `manifest *Page 30 
weight of the evidence.'" See State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-0052, at paragraph two of the syllabus ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.") "Sufficiency of the evidence" is "`a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id. at 386, quoting Black's Law Dictionary (6 Ed.1990) 1433. The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273. Whether the evidence is legally sufficient is a question of law. Thompkins at 386.
 {¶ 130} In contrast, when reviewing whether a conviction was against the manifest weight of the evidence, this court must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" State v.Tibbetts, 92 Ohio St.3d 146, 163, 2001-Ohio-0132, quoting State v.Getsy, 84 Ohio St.3d 180, 193, 1998-Ohio-0533. In order to do this, this court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducing belief" (Emphasis sic.)Thompkins at 387, quoting Black's Law Dictionary (6 Ed.1990) 1594.
 {¶ 131} Robinson was convicted of aggravated murder in violation of R.C. 2903.01(A). That statute defines the offense as "purposely, and with prior calculation and design, caus[ing] the death of another or the unlawful termination of another's pregnancy." Id. On appeal, Robinson only argues that there is not sufficient evidence *Page 32 
showing prior calculation and design.
 {¶ 132} In order to show that a person has acted with prior calculation and design, the State must prove more than "instantaneous deliberation;" instead, the State must show that the defendant had a scheme designed to implement a calculated decision to kill. State v.Cotton (1978), 56 Ohio St.2d 8, paragraphs two and three of the syllabus. Courts have been unable "to formulate a bright-line test that emphatically distinguishes between the presence or absence of `prior calculation and design.' Instead, each case turns on the particular facts and evidence presented at trial." State v. Taylor,78 Ohio St.3d 15, 20, 1997-Ohio-0243.
 {¶ 133} In this case, the evidence supports the jury's conclusion that the murder was with prior calculation and design. The testimony shows that tensions rose between Robinson and Carter and Wade during the month of August 2001. During the night that Wade was shot, he, Robinson, and Carter were at the Safari Lounge in Steubenville, Ohio. Dixon had been hanging out with Robinson and Carter that night and warned Wade after they left that he had a feeling something bad would happen, based on how Robinson and Carter were acting. Sayles confirmed that Dixon warned him and Wade. Robinson and Carter left the Safari Lounge before Wade.
 {¶ 134} Williams testified that he saw Carter and Robinson outside Wade's house that night after Robinson and Carter left the Safari Lounge. Wade then drove up in his van, got into a fight with Robinson, and Carter and Robinson shot Wade.
 {¶ 135} These facts are sufficient to show prior calculation and design. Carter and Robinson had been angry with Wade because of the assault on Robinson's brother. Carter and Robinson then left the Safari Lounge to wait for Wade outside his home. They then shot and killed Wade. By waiting outside Wade's home, Robinson demonstrated that he had a scheme designed to implement a calculated decision to kill. Accordingly, Robinson's arguments regarding the weight and sufficiency of the evidence supporting his conviction are meritless.
 Cumulative Error {¶ 136} In his final assignment of error, Robinson argues: *Page 32 
 {¶ 137} "The cumulative effect of errors deprived the Appellant of his right to a fair trial under both the Ohio and United States Constitutions."
 {¶ 138} Although a particular error might not constitute prejudicial error in and of itself, a conviction may be reversed if the cumulative effect of the errors deprives appellant of a fair trial, despite the fact that each error individually does not constitute cause for reversal. State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. However, the doctrine of cumulative error is not applicable where appellant fails to establish multiple instances of harmless error during the course of the trial. State v. Garner (1995),74 Ohio St.3d 49, 64, 1995-Ohio-0168. A defendant claiming cumulative error must make "a persuasive showing of cumulative error." State v.Sanders, 92 Ohio St.3d 245, 279, 2001-Ohio-0189. Errors do not become prejudicial by sheer weight of numbers. State v. Hill (1996),75 Ohio St.3d 195, 212.
 {¶ 139} In this case, we have only identified two errors in this case: 1) the prosecutor's references to Birden's failure to appear for rebuttal and 2) the admission of the search warrant and affidavit into evidence. However, the prosecutor's actions were completely harmless since there was a powerful reason for the jury to already doubt Birden's credibility, the fact that Robinson had bribed her to testify on his behalf. This error could not accumulate with any other error to render Robinson's trial unfair. Robinson's ninth assignment of error is meritless.
 Conclusion {¶ 140} In this appeal, Robinson claims that the trial court erred in multiple ways. However each of his arguments is meritless and the evidence introduced clearly supports the jury's verdict. Accordingly, the judgment of the trial court is affirmed.
 Donofrio, J., concurs. Waite, J., concurs. *Page 1