[Cite as *State v. Clark*, 2020-Ohio-5588.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ROY EUGENE CLARK,II,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 19 BE 0037

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 18 CR 218

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Dan Fry*, Belmont County Prosecutor, 147-A West Main Street, St. Clairsville, Ohio 43950 and *Atty. J. Flanagan*, Chief Assistant Prosecuting Attorney for Plaintiff-Appellee

*Atty. John Jurco,* P.O. Box 783, St. Clairsville, Ohio 43950, for Defendant-Appellant.

Dated:  November 30, 2020

---

**D'Apolito, J.**

{¶1}    Appellant Roy Eugene Clark, II appeals his conviction and sentence for one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4)(victim under the age of 13), a felony of the third degree, following a jury trial in the Belmont County Court of Common Pleas. He advances three assignments of error.

{¶2}    First, Appellant contends that the trial court abused its discretion when it overruled his motion and renewed motion for a mistrial, after a prospective juror referred to him as a "chomo" (prison slang for "child molester") in front of the jury pool.  Second, Appellant argues that the trial court committed plain error when it failed to give a curative instruction during jury selection immediately after prospective jurors stated that they wanted to hear and would consider "both sides" of the story.  Finally, Appellant contends that the sentence imposed, the statutory maximum of five years, was not supported by the record and contrary to law.  For the following reasons, Appellant's conviction and sentence are affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶3}    A.M. was twelve years old at the time of the incident and thirteen when she testified at trial. Appellant and A.M. are cousins. They had not seen each other for a number of years, and had previously seen one another exclusively at family functions. However, when A.M. was given a mobile phone, she and Appellant began to communicate occasionally via text messages and social media.

{¶4}    On June 30, 2018, Appellant, a single father, asked A.M. to serve as an overnight babysitter, in the event that he got called out in the middle of the night to perform his towing job.  A.M. asked Appellant if her sixteen-year-old brother could also spend the evening at Appellant's home.  Appellant told A.M. that he did not have enough money to pay both of them, so A.M.'s brother did not accompany her.

{¶5}    That evening, A.M. played with Appellant's son, who was a toddler. When he fell asleep, A.M. and Appellant watched television while seated at opposite ends of the same couch.

Case No. 19 BE 0037

**{¶6}** Even though they were seated on the same couch, Appellant sent text messages to A.M. instead of speaking to her directly. In his texts, Appellant observed that A.M. appeared to be uncomfortable and he encouraged her to stretch her body across the length of the couch. Although A.M. repeatedly declined Appellant's invitation to move closer to him on the couch, he persisted in his efforts to convince her. At some point around 3 a.m., A.M. fell asleep on the couch.

**{¶7}** Appellant testified that he went upstairs to his bedroom, but was awakened by a noise outside. He further testified that he sent a text message to A.M. to determine whether she was the source of the noise, but she did not respond. As a consequence, he went back downstairs, wearing only his boxer shorts, despite the presence of a twelve-year-old girl on his couch.

**{¶8}** According to Appellant's testimony, he leaned over a sleeping A.M. to look through a window, in order to determine the source of the noise. As he leaned over A.M., Appellant scratched his genitals, which were chafed as a result of having been recently shaved. Just then, A.M. awoke.

**{¶9}** A.M. testified that she did not hear any noise, but, instead, awoke to find Appellant standing over her and his hand holding her hand over his penis. A.M. freed her hand and rolled over on the couch, then pretended to be asleep. According to A.M.'s testimony, Appellant then started rubbing his penis with his own hand.

**{¶10}** Next, Appellant tried to wake A.M. by whispering, "hey." (*Id.* at 235-236.) A.M. stood up and said, "what are you doing?" (*Id.* at 235.) Appellant then put his penis back into his underwear and apologized. He told A.M. that he was sleepwalking. Appellant never told A.M. that he heard a noise, but returned to his bedroom on the second floor.

**{¶11}** A.M. immediately tried to contact her mother. However, A.M.'s mobile telephone did not have a cellular connection, and the WIFI connection in Appellant's home was disengaged. A.M. told Appellant to connect the WIFI, and he complied. A.M. was unable to reach her mother, so she contacted her grandmother by way of a text message.

**{¶12}** A.M.'s grandmother drove to her daughter's house and told A.M.'s mother to retrieve A.M. immediately. When the two women arrived at Appellant's residence, they

Case No. 19 BE 0037

found A.M. distraught and sitting outside of the house. When her mother asked if she was okay, A.M. responded, "No. Get me out of here." (*Id.* at 200.) A.M. and her mother returned home and reported the incident to law enforcement.

**{¶13}** Deputies from the Belmont County Sheriff's Office arrived at A.M.'s home at 5:39 a.m. and spoke briefly to A.M. Next, the deputies traveled to Appellant's home and spoke to him. The statements of both A.M. and Appellant were captured on the deputies' body cameras, and were consistent with their trial testimony.

**{¶14}** On October 4th, 2018, the Belmont County Grand Jury indicted Appellant for one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4). On May 30th, 2019, a jury trial was held. The jury found Appellant guilty of the sole count in the indictment.

**{¶15}** At the sentencing hearing conducted on July 22, 2019, Appellant was sentenced to a 60-month term of imprisonment, and ordered to register as a Tier II Sex Offender. This timely appeal followed.

## ANALYSIS

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN OVERRULING DEFENSE COUNSEL'S MOTION TO DECLARE A MISTRIAL.**

**{¶16}** During voir dire by the state, the following exchange occurred:

MR. FLANAGAN: I notice from the biographies we have some folks here that essentially share the same employment. And I think that we had, was it, two corrections officers; am I correct? Okay. I know Mr. Weeks, you were listed, and Mr. Secrest; is that correct.

PROSPECTIVE JUROR SECREST: Yes.

MR. FLANAGAN: Always begs the question: Do you two know each other?

PROSPECTIVE JUROR WEEKS: Yeah.

PROSPECTIVE JUROR SECREST: Yes.

MR. FLANAGAN: Are you on the same shift, or?

PROSPECTIVE JUROR WEEKS: Yep.

PROSPECTIVE JUROR SECREST: Yes.

MR. FLANAGAN: Okay. All right. Do you think — and Mr. Secrest, we will start with you. When you are in the jury room, I think it's fair to say — and I don't want to overstep my bounds. But it's a sharing of thoughts when you go into that jury room to ultimately deliberate, because at the end of all of this, at the end of the presentation of evidence, the State of Ohio is going to ask you to sign a guilty verdict. And in doing so, or prior to doing so, there's going to be a sharing of thoughts, okay. And let's use Ms. Mokros, for example. She may say, "Well, I think this, this, this and this."

That's usually okay when you don't know any of the other jurors, but you and Mr. Weeks, I mean, not only do you work in the same place, you're actually on the same shift. Is that going to — is his opinion going to hold any greater weight than, for instance, her opinion?

PROSPECTIVE JUROR WEEKS: No. Absolutely not.

MR. FLANAGAN: Okay. All right. At times our office works with some of the corrections officers, some of your investigators over there. Have you had contact with our office in any case?

PROSPECTIVE JUROR SECREST: No.

MR. FLANAGAN: Okay. All right. So any case that we are prosecuting because, at times, it's fair to say that some the people in the population cause problems over there; fair enough?

PROSPECTIVE JUROR SECREST: Yeah.

MR. FLANAGAN: So you had no involvement with our office regarding any of the inmates that you supervise?

PROSPECTIVE JUROR SECREST: No.

MR. FLANAGAN: Okay.

Mr. Weeks, the same question, without going through that very long hypothetical. Any issue with you serving as a juror knowing that Mr. Secrest will be one of your other jurors?

PROSPECTIVE JUROR WEEKS: As far as I know, no.

MR. FLANAGAN: Okay. Would his opinion hold any greater weight than, say, again — Ms. Mokros, sorry to pick on you — but Ms. Mokros' opinion?

PROSPECTIVE JUROR WEEKS: I don't think so.

MR. FLANAGAN: Given the position — well, let me ask you this Mr. Weeks: Have you had any involvement with our office through maybe your investigators or anything like that as it relates to inmate conduct?

PROSPECTIVE JUROR WEEKS: I don't believe so.

MR. FLANAGAN: No? Okay.

Based on your position that you hold over at the institution, do you think that that is going to be a detriment to you sitting as a juror when it comes to fairness, regardless of for the State or the defendant?

PROSPECTIVE JUROR WEEKS: You want the truth?

MR. FLANAGAN: Please.

PROSPECTIVE JUROR WEEKS: Screw that chomo.

MR. FLANAGAN: I'm sorry I missed that.

Case No. 19 BE 0037

PROSPECTIVE JUROR WEEKS: I said screw that chomo. Touching kids? I work with them people all day.

(Trial Tr. at 27-31).

{¶17} At a bench conference, immediately following the foregoing colloquy, the state asked that Weeks be removed for cause. Appellant did not object and moved for a mistrial. The trial court overruled the motion, excused Weeks, and instructed the remaining prospective jurors to disregard Weeks' comments, as follows:

Ladies and gentlemen, I told you early on in the process that we must have jurors who are as free as possible from bias or preconceived ideas. That's what I mean by a preconceived idea. By that gentleman's experience, he has a preconceived notion of how he would decide the case before he hears a word of proof. Again, at this point in time, [Appellant] is presumed to be not guilty. That's a principal of law that we operate under in this country. He only loses the benefit of that presumption if you, based on what you hear in this courtroom, decide that he is guilty. You make that decision based on the evidence that you hear, not based on your prior life experience, your employment or what someone else may have said. So I am going to ask you at this point to disregard all of the comments by Mr. Weeks. I am not criticizing him for those comments; that is his opinion. In this country, we are free to have opinions. But again, for this type of situation, you must put those all aside and decide guilt or innocence just based on what you hear in the courtroom.

(*Id.* at 32-33.)

{¶18} After the jury was empaneled, defense counsel renewed the motion for a mistrial, citing the "audible gasp" from the prospective jurors and other members of the gallery in response to Weeks' comments. (*Id.* at 158.) Appellant also noted that Secrest and Weeks were both corrections officers that shared the same shift. The trial court overruled the renewed motion.

Case No. 19 BE 0037

**{¶19}** An accused is entitled to a trial before an impartial, unprejudiced, and unbiased jury. *State v. Robinson*, 7th Dist. Jefferson No. 05 JE 0008, 2007-Ohio-3501, ¶ 94. This right is guaranteed by both the Ohio and United States Constitutions. *Id.* A jury must decide a case solely on the evidence and argument, not on any outside influence. *Id.*

**{¶20}** Mistrials are only necessitated when justice requires and a fair trial is not possible. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). Generally, prejudicial effect is not presumed, but must be affirmatively shown of record. *State v. Treesh*, 90 Ohio St.3d 460, 464, 739 N.E.2d 749 (2001). It is well-established that "the party complaining about juror misconduct must establish prejudice." *State v. Adams*, 103 Ohio St.3d 508, 817 N.E.2d 29, 2004-Ohio-5845, ¶ 42.

**{¶21}** The denial of a motion for a mistrial is reviewed for an abuse of discretion. *Treesh, supra,* at 480. Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶22}** Simply stated, Appellant has failed to demonstrate that he suffered any prejudice as a result of Weeks' comments. The trial court provided a curative instruction immediately following Weeks' dismissal. Jurors are presumed to follow the trial court's instructions. *State v. Peyatt*, 7th Dist. Monroe No. 18 MO 0006, 2019-Ohio-3585, 142 N.E.3d 1190, ¶ 40, motion for delayed appeal granted, 158 Ohio St.3d 1408, 2020-Ohio-518, 139 N.E.3d 928, ¶ 40 (2020), and appeal not allowed, 158 Ohio St.3d 1465, 2020-Ohio-1393, 142 N.E.3d 701, ¶ 40 (2020), and appeal not allowed, 159 Ohio St.3d 1446, 2020-Ohio-3712, 149 N.E.3d 519, ¶ 40 (2020), see also *State v. McKnight*, 107 Ohio St.3d 101, 2005–Ohio–6046, 837 N.E.2d 315, ¶ 220.

**{¶23}** Of equal import, the trial court effectively used Weeks' comment as an example of the bias that voir dire is intended to expose. The curative instruction also emphasized the presumption of innocence afforded to every criminal defendant, as well as the jury's responsibility to render their verdict based solely on the evidence adduced at trial.

**{¶24}** Further, Appellant's argument that a fair trial was not possible is not born out by the record. The victim's account of the crime was compelling, and supported by

the text message exchange, which was admitted into evidence. Appellant's version of the events of that evening strained credulity. A review of the trial testimony demonstrates that Appellant's conviction was predicated upon the evidence adduced at trial, rather than Weeks' comments during voir dire.

**{¶25}** Accordingly, we find that the trial court did not abuse its discretion when it denied Appellant's motion and renewed motion for a mistrial. We further find that Appellant's first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT PLAINLY ERRED IN FAILING TO ISSUE A CURATIVE INSTRUCTION FOLLOWING COMMENTS BY PROSPECTIVE JURORS ON APPELLANT'S RIGHT NOT TO TESTIFY AT TRIAL.**

**{¶26}** During voir dire by defense counsel, Prospective Juror Christy was asked to identify the party with the burden of proof in a criminal case. Christy responded, "You both have to prove. * * * You both have to make a proof. Both sides needs [sic] to come forward and prove one way or another." (Trial Tr., p. 78-79.) When defense counsel asked the jury pool if any of them agreed with Christy, Prospective Juror Venham responded, "The State has to prove his guilt." (*Id.* at p. 79.) Prospective Jurors Wilson and Stanley concurred with Venham. (*Id.* at p. 80.) Defense counsel returned to Christy and asked:

> MR. MYSER: Is it possible that I could say nothing to a witness and is it possible that the defendant could say nothing, meaning doesn't testify at all, and we present zero evidence –
>
> PROSEPCTIVE JUROR CHRISTY: Yes.
>
> MR. MYSER: – and he be found not guilty.
>
> PROSPECTIVE JUROR CHRISTY: If they can't prove that there is any evidence, yes.

\* \* \*

MR. MYSER: Everybody agree with that? Who thinks they have to hear from the defendant?

PROSPECTIVE JUROR B. CLARK: I think we have to hear from both sides to get a fair judgment. I feel that way.

MR. MYSER: Okay. Why?

PROSPECTIVE JUROR B. CLARK: Because I want to hear both sides. I want to hear State's evidence and I want to hear your defense to make a fair and honest judgment of what's going on.

MR. MYSER: Is my defense on trial?

PROSPECTIVE JUROR B. CLARK: To an extent, yes.

MR. MYSER: Why?

PROSPECTIVE JUROR B. CLARK: Because you're going to prove his innocence.

MR. MYSER: Do I have a burden to prove his innocence?

PROSPECTIVE JUROR B. CLARK: Yes.

MR. MYSER: To what degree do I have to prove his innocence?

PROSPECTIVE JUROR B. CLARK: To dispute what the State has evidence — what they have as evidence.

(Trial Tr., p. 80-82.)

{¶27} Defense counsel employed a chart, which was not admitted into evidence, in order to engage in a discussion regarding reasonable doubt. Defense counsel described the chart as follows: "So here's another diagram. Way – all the way up to guilty

beyond a reasonable doubt." (*Id.* at 86.) Defense counsel asked Christy, if she concluded that Appellant "probably" committed the charged crime, would her conclusion result in an acquittal. She responded, "If it's probably, then it's reasonable doubt." (*Id.* at 87.) Then, defense counsel turned to Prospective Juror Coast:

MR. MYSER: Mr. Coast, you have been quiet on my terms. What do you think?

PROSPECTIVE JUROR COAST: I'm a black-and-white guy. There's no gray area. So after I listen to both sides, I will make a decision one way or the other. But I'd like to hear both sides.

MR. MYSER: I am fine with you being black and white. Perfectly fine. My question for black and white: Is that black and white line here, where it's guilty beyond a reasonable doubt, or for you is that black and white line right here, where if you think, "Hey, I suspect that he did it," that means that you cannot return a not guilty verdict? So where is your black and white line?

PROSPECTIVE JUROR COAST: It's probably down there. Maybe not. Somewhere in there, about the center.

MR. MYSER: The judge is going to instruct you on what to do. He is going to say, if you can't find guilty beyond a reasonable doubt, you need to return a not guilty verdict

PROSPECTIVE JUROR COAST: Yeah. And that's what I'd do. Like I said, there's not going to be an in between.

(*Id.* at 90-91.)

{¶28} Next, defense counsel returned his attention to Christy and Clark:

MR. MYSER: Where is your black and white line?

PROSPECTIVE JUROR CHRISTY: Beyond a reasonable a doubt.

MR. MYSER: Is up there? Anybody else?

PROSPECTIVE JUROR B. CLARK: Me.

MR. MYSER: What do you think?

PROSPECTIVE JUROR B. CLARK: Same place.

MR. MYSER: You definitely just went [sic] to hear both sides of the story?

PROSPECTIVE JUROR B. CLARK: I want to hear both sides. That's why I'm here.

PROSPECTIVE JUROR MEHL: Yeah.

PROSPECTIVE JUROR B. CLARK: That's why — my civic duty is to hear both sides and make a determination.

(*Id.* at 90-92.)

{¶29} During a bench conference following the foregoing discussion, the state objected to the chart because it was misleading, arguing that "[f]irst of all, it indicates highly like – guilty, highly likely is – would be not guilty. The instruction does not say that. In fact, the instruction talks about the need to not even have absolute certainty." (*Id.* at 92.) The trial court agreed that the chart "crossed the line * * * into [the trial court's] role." (*Id.* at 93.) The trial court continued, "I will give them what I consider to be a curative instruction, as requested by the State. I will do that now." (*Id.* at 94.)

{¶30} The trial court addressed the jury pool:

You heard statements by the attorneys as part of their questioning process. You saw charts. Anything that an attorney says during this case is not evidence. And when it comes to the definition of terms like "beyond a reasonable doubt," what they tell you is not what necessarily the law is [sic]. I will give you the instructions of the law, including the precise definition in the state of Ohio, of what we mean by "beyond a reasonable doubt." Okay?

Case No. 19 BE 0037

So just keep that in mind as another thing that you have heard during this process.

(*Id.* at 95.)

**{¶31}** In addition to immediately addressing the proper definition of reasonable doubt during voir dire, the trial court's preliminary instructions to the jury, read, in pertinent part, "The defendant, – if the defendant does not testify, you may not consider that for any purpose." (*Id.* at 149.)   The trial court further stated in its preliminary instructions that the state must prove the essential elements of the crime beyond a reasonable doubt.  The trial court repeated the same in its final instructions, with the exception of the Fifth Amendment protection, as Appellant took the stand in his own defense.

**{¶32}** Defense counsel did not object to the trial court's failure to immediately provide a curative instruction regarding the state's burden of proof or Appellant's right not to testify during voir dire. An appellate court does not have to resolve an alleged error if it was never brought to the attention of the trial court "at a time when such error could have been avoided or corrected by the trial court." *State v. Carter*, 89 Ohio St.3d 593, 598, 2000-Ohio-172, 734 N.E.2d 345. In the absence of an objection, this court may only review the trial court's actions for plain error. *Id.*

**{¶33}** Plain error should be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. A claim of plain error does not stand unless, but for the error, the outcome of the trial would have been different: "[t]he test for plain error is stringent. A party claiming plain error must show that (1) an error occurred, (2) the error was obvious, and (3) the error affected the outcome of the trial." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶ 378.

**{¶34}** Although the trial court provided a curative instruction on reasonable doubt during voir dire, it did not provide a similar instruction regarding the state's burden of proof or Appellant's right to remain silent.  Nonetheless, we find that the trial court's failure to immediately provide a curative instruction during voir dire did not affect the outcome of the trial.

Case No. 19 BE 0037

{¶35} Appellant cites a string of Ohio cases prohibiting the state from commenting during voir dire on a criminal defendant's decision to exercise his Fifth Amendment right to remain silent. However, defense counsel engaged in the colloquy with the prospective jurors, not the state. Moreover, defense counsel merely pooled the jury regarding their understanding of the burden of proof in criminal trials and Appellant's right not to testify. Further, despite the fact that the trial court did not directly address Appellant's Fifth Amendment rights in its curative instruction during voir dire, it broadly stated that instructions regarding the law were the exclusive domain of the trial court.

{¶36} Of greater import, prior to opening arguments, the trial court plainly stated in its preliminary instructions to the jury that Appellant's decision to remain silent could not be considered in determining his guilt or innocence, and that the state must prove each essential element of the crime charged beyond a reasonable doubt for a guilty verdict. In addition, and as previously stated, the victim provided compelling testimony regarding the crime.

{¶37} Finally, Appellant does not argue that he would not have taken the stand, but for prospective jurors' comments regarding the testimony of "both sides." Without Appellant's testimony, A.M.'s account of the events of June 30, 2018 would have been uncontroverted.

{¶38} Accordingly, we find that the trial court did not commit plain error when it failed to provide an immediate curative instruction during voir dire regarding the state's burden of proof and Appellant's right not to testify. We further find that Appellant's second assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 3

### THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM SENTENCE.

{¶39} The standard of review in a felony sentencing appeal is dictated by R.C. 2953.08(G). *State v. Benitez*, 7th Dist. Jefferson No. 18 JE 0016, 2019-Ohio-4634, ¶ 31, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. R.C. 2953.08(G) provides, in pertinent part:

The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court. The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate courts' standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

{¶40} Prior to sentencing, Appellant underwent a risk evaluation assessment at Eastern Ohio Corrections Center. The report indicated that Appellant was at a low risk for recidivism and that he was appropriate for EOCC placement. The victim statement requested that the trial court impose a minimum sentence of one year and that Appellant be placed on the sex offender registry. As a consequence, Appellant contends that the imposition of the maximum sentence of five years was unduly harsh and contrary to the overriding purposes of felony sentencing.

{¶41} Although trial courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12. *Benitez*, 2019-Ohio-4634 at ¶ 33. R.C. 2929.11(A) provides that the overriding purposes of felony sentencing are (1) "to protect the public from future crime by the offender and others"; and (2) "to punish the offender * * * using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources."

Case No. 19 BE 0037

Further, the sentence imposed must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

**{¶42}** R.C. 2929.12 provides a non-exhaustive list of sentencing factors the trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses. When imposing a felony sentence, the trial court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing." R.C. 2929.12(A). The factors a trial court may consider include the "more serious" factors, such as "[t]he physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim" and "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense." R.C. 2929.12(B)(1) and (2). The court may also consider the "less serious" factors, any recidivism factors, and any mitigating factors listed in R.C. 2929.12(C)-(F).

**{¶43}** R.C. 2929.11 does not require the trial court to make any specific findings as to the purposes and principles of sentencing. *State v. Shaw*, 7th Dist. Belmont No. 15 BE 0065, 2017-Ohio-1259, ¶ 36, citing *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31. Similarly, R.C. 2929.12 does not require the trial court to "use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *Shaw,* citing *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

**{¶44}** At the beginning of the sentencing hearing, the trial court stated that the sentence was predicated upon a review of the entire record, including the jury verdict, the presentence investigation report, and the EOCC report that Appellant was appropriate for placement. The trial court further stated that the sentence was imposed with due consideration of the purposes and principles of sentencing (7/22/19 Sent. Hrg. at 2-3, 8.)

**{¶45}** Although the trial court was not required to make findings on the record, the trial court observed that the victim in this case suffered serious psychological harm, which is "continuing and worsened by her age." The trial court further observed that Appellant's familial relationship with the victim facilitated the crime. The trial court characterized Appellant's behavior as a "carefully orchestrated [ ] plan to lure his victim, based upon a

pretext of necessity" likewise characterized the electronic messages as "an attempt to groom her throughout [the] entire encounter to satisfy his own pleasures." (*Id.* at 6.)

**{¶46}** The trial court further relied on Appellant's previous convictions for unlawful sexual contact with a minor, obstructing official business, and marijuana possession. The trial court also opined that Appellant's record established that he has not responded favorably to prior sanctions. (*Id.*) The trial court cited Appellant's "unhealthy and uncontrollable impulsive attraction to minors," based on the facts adduced at trial, his previous conviction, and the fact that Appellant married his ex-wife when he was 32 and she was "days beyond her 18th birthday." (*Id.* at 7.)

**{¶47}** Accordingly, we find that the trial court fulfilled its statutory obligation under R.C. 2929.11 and 2929.12, and that the sentence imposed was not clearly and convincingly contrary to law. We further find that Appellant's third assignment of error has no merit.

## CONCLUSION

**{¶48}** For the foregoing reasons, Appellant's conviction and sentence are affirmed.

Donofrio, J., concurs.

Waite, P.J., concurs.

Case No. 19 BE 0037

[Cite as *State v. Clark*, 2020-Ohio-5588.]

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**